UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

TYRONE CHAPPELLE,

                Petitioner,

v.

THOMAS GRIFFIN,

                Respondent.

9:16-CV-1130
(GLS)

---

APPEARANCES:

TYRONE CHAPPELLE
12-A-4465
Petitioner, pro se
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

HON. ERIC T. SCHNEIDERMAN
Attorneys for Respondent
Office of the Attorney General
120 Broadway
New York, New York 10271

GARY L. SHARPE
Senior United States District Judge

OF COUNSEL:

MARGARET A. CIEPRISZ
ALYSON J. GILL
Assistant Attorneys General

## DECISION and ORDER

### I. INTRODUCTION

Petitioner Tyrone Chappelle filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 1, Petition ("Pet.").[1] He challenges a 2012 judgment of conviction in Ulster County Court of two counts of Criminal Sale of a Controlled Substance in the Third Degree, and two counts of Criminal Possession of a Controlled Substance in the Third

---

[1] The cited page numbers for the petition refer to those generated by the Court's electronic filing system (ECF).

Degree. Pet. at 1-2. As a result of the conviction, petitioner is currently serving an aggregate prison term of fifteen years with three years post-release supervision. *Id.*

Petitioner raises three grounds for habeas relief: (1) his due process rights were violated, and his right to appeal was abridged when a portion of jury selection was not recorded; (2) the trial court abused its discretion by admitting into evidence the drugs purchased from him; and (3) trial counsel was ineffective because counsel did not "object to the introduction of the crack cocaine as evidence," or "to the off-the-record jury selection that took place." Pet. at 9-16. Respondent opposed the petition. Dkt. No. 9, Respondent's Memorandum of Law ("R. Mem."); Dkt. No. 10, Answer; Dkt. No. 11-1 to Dkt. No. 11-2, State Court Records (SR); Dkt. No. 11-3 through 11-5, Transcripts (T). Petitioner filed a reply. Dkt. No. 16, Reply.

For the reasons that follow, the petition is denied and dismissed.

## II. RELEVANT BACKGROUND

In November 2011, the police in the city of Kingston, New York, conducted a targeted operation called "Operation Clean Sweep" aimed at street-level cocaine and heroin dealers. The police department used undercover officers and confidential informants to carry out this operation. Dkt. No. 11-3 at T 338-39; Dkt. No. 11-4 at T 404-05.

On November 16, 2011, police officer Shirley Jiminian was working undercover with a confidential informant (CI). Dkt. No. 11-4 at T 405-06. During the morning hours, Officer Jiminian and the CI met with a known drug dealer to purchase crack cocaine. *Id.* at T 406-07. After arriving at the designated location, the dealer entered the rear passenger seat of the undercover car and sold cocaine to the CI with pre-recorded police funds. *Id.* at T 406-

2

07, 411; Dkt. No. 11-3 at T 342-44.  Once the sale was finished, Officer Jiminian was about to drive away from the area when petitioner, who was not known to either the officer or the CI, approached the vehicle, introduced himself and asked for a ride.  Dkt. No. 11-3 at T 344-45; Dkt. No. 11-4 at T 412, 498.  The CI said she could not give him a ride, but asked for petitioner's number in case the drugs she had just purchased were "garbage."  Dkt. No. 11-4 at T 412, 501-03.  Petitioner responded that he had good quality crack to sell.  *Id.* at T 502.  The CI promised to call him to arrange a meeting for the purpose of buying more crack cocaine.  *Id.*

Later that day, the CI made a recorded "controlled" call to petitioner, during which they agreed to meet five minutes later for the purpose of buying "fifty cent," or $50 worth of crack cocaine.  Dkt. No. 11-4 at T416-19; 504, 510.  When Officer Jiminian and the CI pulled into the designated meeting place, petitioner got into the back seat of the car.  The CI gave petitioner $50 and petitioner gave her a loose chunk of crack cocaine.  *Id.* at T 417-19, 510-12, 516.  After petitioner left, the CI handed Officer Jiminian the chunk of crack cocaine, which was later placed into an evidence bag.  *Id.* at T 436, 516-17.

Shortly thereafter, the CI called petitioner a second time to arrange another sale.  Dkt. No. 11-4 at T 438-39; 517-18.  Five minutes later, Officer Jiminian and the CI drove to the designated spot.  However, while they were driving, petitioner called the CI and directed them to a different location.  *Id.* at T440, 522-23.  Once they arrived at the second location, petitioner got into the back seat of the undercover car, and sold the CI a quantity of crack cocaine.  *Id.* at T 489-90, 523-25.  As before, when petitioner left the car, the CI handed Officer Jiminian the crack cocaine which was later sealed into a second evidence bag.  *Id.* at

3

T 451.

Petitioner was subsequently indicted in March 2012, by an Ulster County Grand Jury, of criminal sale of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the third degree (two counts). Dkt. No. 11-1 at SR 8-9. After a jury trial, petitioner was found guilty of all counts. He was sentenced as a prior violent felony offender to an aggregate term of fifteen years in prison, followed by three years of post-release supervision. *Id.* at SR 35-36.

Petitioner appealed his conviction, and, on March 12, 2015, the Appellate Division affirmed. *People v. Chappelle*, 126 A.D.3d 1127 (3d Dep't 2015). On June 10, 2015, petitioner's application for leave to appeal was denied. *Chappelle*, 25 N.Y.3d 1161 (2015). This action followed.

## III. RELEVANT STANDARDS

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 180-183 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be

4

given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, U.S. , 133 S. Ct. 1990, 1992 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, U.S. , 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'" (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, 567 U.S. 37, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro*,

5

550 U.S. at 473-74 (quoting § 2254(e)(1)).  Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]"  *Johnson v. Williams*,    U.S.   , 133 S. Ct. 1088, 1096 (2013).

### B. Exhaustion and Procedural Default

#### 1. Exhaustion

An application for a writ of habeas corpus may not be granted until a petitioner exhausts all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254 (b)(1)(A), (B)(i), (ii).  The exhaustion requirement "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings[.]"  *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas petition.  Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (citations omitted); *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (stating that a petitioner must "'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the

6

highest state court capable of reviewing it.'") (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)). In other words, petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A petitioner satisfies the fair presentation requirement by: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc)); *see Baldwin*, 541 U.S. at 33 ("Reese, however, has not demonstrated that Oregon law uses the words 'ineffective assistance' in the manner he suggests, that is, as referring only to a federal-law claim."); *Duncan v. Henry,* 513 U.S. 364, 366 (1995) (explaining that "mere similarity of claims is insufficient to exhaust").

### 2. Procedural Default

If a petitioner has not fairly presented a claim in state court and no longer has an avenue to properly exhaust it, a federal habeas court may conclude the claim is procedurally defaulted. *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(i) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile").

7

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, *i.e.*, that he is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("'The miscarriage of justice exception is concerned with actual as compared to legal innocence.'" (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 132 S. Ct. 912, 922 (2012); *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard").

## IV. DISCUSSION

### A. Ground One

In Ground One of his petition, petitioner argues that his Fourteenth Amendment "due process right to an appeal was abridged when a critical portion of the jury selection process was not recorded." Pet. at 9. Respondent argues that petitioner did not fairly present this claim to the state courts in federal constitutional terms, and the claim is therefore unexhausted and procedurally defaulted. Dkt. No. 9, R. Mem. at 9-12. Petitioner asserts that he fairly presented this claim in federal constitutional terms because he "implicated" the "Due Process Clause in the Fourteenth Amendment[.]" Dkt. No. 16, Reply at 3. This Court

8

agrees with respondent.

On direct appeal, petitioner argued the trial court committed reversible error because a portion of jury selection was not transcribed. Dkt. No. 11-1 at SR 105-07. He claimed that the trial court went off the record after it heard that the number of peremptory challenges proposed by counsel would only leave five jurors from the first panel of jurors. After speaking to counsel off-the-record, six jurors were seated. *Id.* at SR 105. Petitioner argues he was prejudiced "because the limited recording of voir dire fails to provide for full appellate review." SR at 107. Petitioner's claims were based upon New York cases, including one that interpreted New York Judiciary Law § 295, which requires stenographic notes be taken for all testimony during the proceedings, every ruling and decision of the presiding judge and, "every remark or comment of such judge during the trial, when requested to do so by either party, together with each and every exception taken to any such ruling, decision, remark or comment." *See id.* at SR 105-07.

The Appellate Division denied petitioner's claim, ruling that "[a]lthough we agree that verbatim recordation of the trial proceedings is the better practice, unless waived, the case law makes clear that the absence of a stenographic record does not, per se, require reversal of defendant's conviction." *Chappelle*, 126 A.D.3d at 1128 (internal citations omitted). The court concluded that defendant failed to show he was prejudiced by the absence of the recording and noted he "did not request that this part (or any part) of voir dire be recorded and, importantly, he does not assert that an incorrect ruling or any prejudicial error occurred during the omitted portion." *Id.* In his counseled application for leave to appeal to the New York Court of Appeals, petitioner again cited Judiciary Law § 295. Specifically, he asked the court to "give literal interpretation to Judiciary Law § 295" and create a "bright line rule"

requiring transcription of the entire jury selection process to afford a defendant full appellate review. Dkt. No. 11-2 at SR 486-88.

Compared to his current habeas claim, petitioner did not argue on direct appeal that his federal due process right or other federal constitutional right was violated because a portion of the jury selection was not transcribed. Instead, petitioner cited only New York authority to support his claim. Dkt. No. 11-1 at SR 105-07; Dkt. No. 11-2 at SR 486-88. With regard to the two New York State cases petitioner cites on direct appeal, both cases interpret New York law, and neither case discusses a petitioner's federal due process right to appellate review. In *People v. Harrison*, 85 N.Y.2d 794 (1995), the Court of Appeals discussed a trial court's failure to comply with Judiciary Law § 295 after a defense counsel specifically requested her objections during jury selection be recorded. The court concluded that the "trial court erred by foreclosing defendant from exercising his right to obtain a stenographic record of voir dire as Judiciary Law § 295 requires." *Harrison*, 85 N.Y.2d at 798. In *People v. Faulkner*, 36 A.D.3d 1071, 1072-73 (3rd Dep't. 2007), the Appellate Division held there was reversible error, and that the defendant was prejudiced, "because the limited recording of voir dire fail[ed] to provide for full appellate review and, based only on the information in the record, the juror in question should have been dismissed for cause." Notably, the Appellate Division in *Faulkner* does not rely on federal due process as the basis to reverse the defendant's conviction. Simply citing to *Harrison* and *Faulkner* on direct appeal did nothing to alert the state court to the federal constitutional claim petitioner is now raising. *Baldwin*, 541 U.S. at 33; *Carvajal*, 633 F.3d at 104.

Ground One is also procedurally defaulted. Petitioner cannot now file a direct appeal

10

in order to exhaust the claim because a defendant is "entitled to one (and only one) appeal to the Appellate Division." *Aparicio,* 269 F.3d at 91. Additionally, "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." *Id.*; *see Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (holding that "even if no state court had applied section 440.10 (2)(c) to Clark's claim, the district court itself should have done so in the first instance pursuant to the exhaustion requirement for federal habea.); *Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003) (applying New York Criminal Procedure Law (CPL) § 440.10 (2)(c) to claims raised for the first time in federal habeas petition).

Petitioner does not assert any basis for finding cause for his failure to fairly present his federal constitutional claim to the state courts, and the Court discerns none. *See Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (concluding that petitioner did not satisfy the cause and prejudice showing where he did not give any reason for failing to properly exhaust his federal claim in state court). He did not argue in any state court that appellate counsel was ineffective for failing to fairly present the claim, and he does not make that argument now. Pet; Reply; *see Carrier*, 477 U.S. at 488-89 (the "exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default") (internal citation omitted). Because petitioner failed to establish cause, the Court need not decide whether he will suffer actual prejudice before foreclosing habeas review. *Carrier*, 477 U.S. at 496; *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Finally, petitioner has not alleged or shown actual innocence. *See Poindexter v.*

11

*Nash*, 333 F.3d 372, 380 (2d Cir. 2003) (noting that the concept of actual innocence is distinct from the concept of legal innocence, and a petitioner whose "argument is a technical one" does not raise "a claim of 'actual innocence' as that term is used . . . in habeas jurisprudence generally"); *Williams v. Brown*, No. 1:08-CV-10044, 2010 WL 850182 at *3 (S.D.N.Y. Mar. 11, 2010) (rejecting actual innocence claim where "[t]he evidence adduced by [the petitioner] in his petition solely concerns certain alleged procedural irregularities . . . none of which casts any doubt on [the petitioner's] underlying guilt"); *see also Schlup*, 513 U.S. at 329 ("[A]ctual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty").

Accordingly, Ground One of the petition is unexhausted and procedurally defaulted, and it is dismissed.[2]

## B. Grounds Two and Three

In Ground Two of his petition, petitioner claims that the cocaine the CI purchased from

---

[2] To the extent petitioner argues that Judiciary Law § 295 should be interpreted to require transcription of the entire jury selection, such a claim is based on state statutory law, and is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a). Additionally, a state is generally required to provide a "record of sufficient completeness" to permit adequate appellate review of a criminal defendant's claims, but the Supreme Court has never held that due process requires verbatim transcription of the entire proceedings of a trial. *Mayer v. Chicago*, 404 U.S. 189, 194 (1971). Therefore, the Appellate Division's rejection of this claim was not contrary to clearly established Supreme Court precedent. *See Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (when a petitioner raises an issue that the Supreme Court has not "squarely address[ed]" or "clear[ly] answer[ed]," habeas relief is unavailable).

Finally, even if the claim was properly before the Court, petitioner failed to demonstrate that he was prejudiced as a result of the incomplete or missing transcription. *McCray v. Barkley,* No. 1:03-cv-4821, 2004 WL 32931 at *11-12 (S.D.N.Y. Jan. 7, 2004); *Godfrey v. Irvin*, 871 F.Supp. 577, 584 (W.D.N.Y. 1994). Petitioner does not suggest, let alone establish, how his right to appeal was prejudiced by the brief off-the-record discussion during jury selection. Although petitioner speculates that the conversation "covered peremptory challenges," the record before this Court does not support such claim. Instead, it appears the trial court went off the record to clear up some confusion with counsel regarding which jurors were sitting in which seats. Dkt. No. 11-1 at SR 105-06, 173-75. The Appellate Division did not unreasonably apply federal law by concluding that petitioner failed to assert, let alone demonstrate, that failing to record the entire voir dire prejudiced him.

12

him should not have been admitted into evidence. Pet. at 10-15. In Ground Three, he argues that he was denied effective assistance of trial counsel when counsel failed to object to off-the-record discussions during jury selection or to the introduction of the cocaine. Pet. at 10-16. Respondent argues that both of these grounds for relief are unexhausted and procedurally defaulted because they were not raised in petitioner's leave application to the New York Court of Appeals. Dkt. No. 9, R. Mem. at 16-17, 21-22. Petitioner counters that because his appellate brief was submitted to the Court of Appeals along with the leave letter, his "desire to have <u>all</u> the issues raised in the direct appeal was made obvious[.]" Dkt. No. 16, Reply at 5 (emphasis in original). This Court agrees with respondent.

Petitioner raised Grounds Two and Three on direct appeal. Dkt. No. 11-1 at SR 108-12. Both claims were denied on the merits by the Appellate Division. *Chappelle,* 126 A.D.3d at 1128-1129. Petitioner sought leave to appeal to the New York Court of Appeals. Dkt. No. 11-2 at SR 486-88. However, the only specific claim identified in the leave letter, and argued in detail, was that the trial court erred by failing to have the entire jury selection transcribed. *See id.* at SR 486 ("This case involves the troubling issue of part of the jury selection not being transcribed."). Because appellate counsel specifically argued only one claim at length in the leave letter, Grounds Two and Three were not fairly presented to the New York Court of Appeals and are unexhausted. The fact that counsel enclosed the appellate briefs does not change the result in this case. *See Galdamez v. Keane*, 394 F.3d 68, 74-75 (2005) (holding that when a defendant files a leave letter to the New York Court of Appeals, attaching his appellate briefs, and requesting the Court to consider all the arguments in the appellate brief without specifying any particular issues, the defendant fairly presented all the

13

claims in the Appellate Brief); *Jordan v. LeFevre*, 206 F.3d 196, 198 (2d Cir. 2000) ("Arguing a single claim at length and making only passing reference to possible other claims to be found in the attached appellate briefs" by requesting leave "[f]or all of these reasons and the reasons set forth in his Appellate Division briefs" does not "fairly apprise the state court of those remaining claims"); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (if a petitioner's leave application specifically requested review of only one claim, all other claims would be deemed procedurally defaulted, even though the petitioner included his appellate brief in which the other claims were raised).

Grounds Two and Three are also procedurally defaulted because there is no remaining avenue by which petitioner could properly exhaust them. As noted above, petitioner already pursued the one direct appeal to which he was entitled. *Aparicio,* 269 F.3d at 91. Petitioner also could not exhaust these claims by litigating a motion to vacate his conviction pursuant to New York Criminal Procedure ( §440.10 because the facts that would support the claims were apparent on the record. *Id.* at 91 (citing CPL § 440.10 (2)(c); *see Clark*, 510 F.3d at 393; *Sweet;* 353 F.3d at 140-41.[3] Because no remaining avenue exists in which petitioner could properly present Grounds Two and Three, they are deemed exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732; *Aparicio*, 269 F.3d at 90.

Petitioner does not assert any basis for finding cause, and the Court discerns none. Pet; Reply; *Bossett*, 41 F.3d at 829. The Court therefore need not decide whether he will

---

[3] It is also worth noting that to the extent petitioner's claims in Grounds Two and Three were fairly presented to the state courts, any CPL §440.10 motion would also likely fail because the Appellate Division rejected them on the merits. *Chappelle*, 126 A.D.3d at 1128-29. The state court would have to deny a CPL §440.10 motion on that ground. *See* CPL §440.10(2)(a) (a state court "must deny" a motion to vacate a judgment when "[t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue").

14

suffer actual prejudice before foreclosing habeas review. *Carrier*, 477 U.S. at 496; *Stepney*, 760 F.2d at 45. Finally, as previously noted, petitioner has not alleged or shown actually innocence. *Schlup*, 513 U.S. at 329; *Poindexter,* 333 F.3d at 380.

Accordingly, Grounds Two and Three of the habeas petition are denied and dismissed.[4]

## V. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition (Dkt. No. 1) is **DENIED AND DISMISSED**; and it is further

**ORDERED** that no Certificate of Appealability shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires.[5] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

June 15, 2017
Albany, New York

Gary L. Sharpe
U.S. District Judge

---

[4] Respondent also argues that Ground Two is barred by the Appellate Division's application of an adequate and independent state court ground, and is not cognizable on habeas review, and that both Grounds Two and Three are meritless. Dkt. No. 9, R. Mem. at 17-25. Because Grounds Two and Three are unexhausted and procedurally defaulted as discussed above, the Court will not address these alleged alternate grounds for dismissal of the claims.

[5] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *See Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).